**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
In re:                                                              Chapter 11

**EAST 167TH STREET REALTY CORP.,**                   Case No. 11-10272 (AJG)


                              Debtor.
-------------------------------------------------------------X

DISCLOSURE STATEMENT FOR
PLAN OF REORGANIZATION
OF EAST 167TH STREET REALTY CORP.

THIS IS NOT A SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN.
ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE
STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT. THIS
DISCLOSURE STATEMENT IS BEING SUBMITTED TO THE BANKRUPTCY COURT
FOR APPROVAL BUT HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT.

**ROBINSON BROG LEINWAND**
**GREENE GENOVESE & GLUCK P.C.**
**Attorneys for the Debtor**
875 Third Avenue
New York, New York 10022
212-603-6300

**A. Mitchell Greene, Esq.**

**Dated:** New York, New York

~~May 5,~~ June \_\_\_\_, 2011

**SUMMARY**

East 167th Street Realty Corp. (the "Debtor"), has filed its *Plan of Reorganization of East 167th Street Realty Corp.* dated ~~May 5,~~ June ___, 2011 (the "Plan"), with the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"). This *Disclosure Statement for the Plan of Reorganization of East 167th Street Realty Corp.* (the "Disclosure Statement") is being submitted for the approval of the Bankruptcy Court for use in connection with the solicitation of acceptances of the Plan from holders of Claims against and Interests in the Debtor pursuant to section 1125 of title 11 of the United States Code (the "Bankruptcy Code").

A copy of the Plan accompanies this Disclosure Statement. A glossary of terms frequently used in this Disclosure Statement is set forth in Article 1 of the Plan.

**The Debtor believes that Confirmation of the Plan is in the best interests of Creditors and Interest Holders.**

**THE DEBTOR**

The Debtor is the owner of certain commercial real property located at 46-56 East 167th Street, Bronx, New York (the "Property"), designated as Block 2488, Lots 23, 24 and 25. The Property is improved by a one story building. A portion of the Property is currently leased to Dorox International Corp., who operates a Dunkin Donuts from the leased premises. The balance of the Property is vacant.

Pre petition the Property was encumbered by mortgages in favor of HSBC Bank USA, N.A. ("HSBC") and the United States Small Business Administration ("SBA"). Post-petition, the HSBC note and mortgage claim was assigned to Cortland Services V, LLC ("Cortland") and the SBA claim was assigned to Grandview Ventures 36, LLC ("Grandview"). As at the Petition Date, the Property was also encumbered by tax liens in favor of the City of New York ("NYC")[1] and a purported mechanic's lien held in favor of M. Just Architecture ("M. Just").

Pre-petition the Debtor entered into a "build to suit" lease with C.V.S. Albany, LLC ("CVS"), a subsidiary of CVS Caremark, which lease required the Debtor as landlord to perform certain construction to the premises. Rent pursuant to the lease was to commence upon completion of the buildout by the Debtor. The rents generated by the CVS lease and the Dunkin Donuts would have been sufficient to cover the Debtor's operating expenses. However, the Debtor was unable to procure sufficient financing to fund the contemplated buildout at the Property for the CVS premises. Without sufficient rental income to support its overhead, the Debtor fell behind in its mortgage

---

[1] As set forth in footnote 3 herein, the amount of the NYC secured tax liens may be zero.

payments, resulting in HSBC commencing a foreclosure proceeding against the Debtor in the Supreme Court of the State of New York, County of Bronx, Index No. 08-380783. An order appointing temporary receiver in mortgage foreclosure action was signed on December 22, 2009, appointing Sheldon Sontag as the temporary receiver. The receiver remains in place to date and continues to collect rent at the Property.

**THE PLAN**

Debtor's plan of reorganization provides for the reinstatement of the HSBC mortgage, as assigned to Cortland (the "Cortland Mortgage") and the SBA mortgage as assigned to Grandview (the "Grandview Mortgage"), and payment to unsecured creditors in full over a period of 4 years. The plan also provides for a sale of the Property, subject to the reinstated mortgages, to a corporation to be formed (the "Purchaser") that will be owned 50% by Marc Chemtob and/or Renaissance Realty or its designee, and 50% by Richard Anzarouth and Edward Anzarouth, the shareholders of the Debtor, who will guarantee the plan payments. The purchase price will be utilized to fund the reinstatement amounts; the CVS construction; and all plan payments, including administrative expenses, in full over time in accordance with the priorities established by the Bankruptcy Code.

The table below provides a summary of the classification and treatment of Claims and Interests under the Plan. The figures set forth in the table below represent the Debtor's best estimate of the total amount of Allowed Claims and Allowed Interests in the Case. These estimates have been developed by the Debtor based on an analysis of the Schedules filed by the Debtor, the Proofs of Claims and Proofs of Interests filed by Creditors and Interest Holders, and certain other documents of public record. See "SIGNIFICANT EVENTS IN THE CASE -- Bar Date." Although the Debtor believes that the amounts of the claims set forth below are substantially correct, there can be no assurance that Claims and Interests will be allowed by the Bankruptcy Court in the amounts set forth below:

| Class and Estimated Amount[2] | Type of Claim or Equity Interest | Summary of Treatment |
| --- | --- | --- |
| Not Applicable Approximately $55,000 | Administrative Claims (including Claims for Professional Compensation and Reimbursement, Post- | **Unimpaired.** Each Administrative Claim, to the extent not previously paid, shall be paid by the Disbursing Agent in Cash in full on (i) the later of the Effective Date, the date payment of such Claim is due under the terms thereof or applicable law, or three business days after such Claim |

---

[2] The amounts set forth in this schedule are not, and should not be deemed admissions by the Debtor as to the validity or amount of any claim.

| Class and Estimated Amount[2] | Type of Claim or Equity Interest | Summary of Treatment |
|---|---|---|
| | petition Ordinary Course Liabilities and Post-petition Tax Claims. | becomes an Administrative Claim or (ii) as may be otherwise mutually agreed in writing between the Disbursing Agent and the holder of such Claim; *provided, however,* that any Administrative Claim incurred by the Debtor in the ordinary course of its business shall be paid in full or performed by the Debtor in accordance with the terms and conditions of the particular transaction giving rise to such Administrative Claim and any agreements relating thereto. |
| Class 1 Unknown but believed not to exceed $1,000 | Priority Claims (other than Administrative Claims) | **Unimpaired.** Subject to the provisions of Article 7 of the Plan with respect to Disputed Claims, in full satisfaction, release and discharge of Priority Claims, each holder of a Priority Claim shall receive, on the Effective Date, Cash, in the full amount of its Priority Claim from the Debtor. |
| Class 2 Scheduled in the amount of $320,567.84[3] | NYC Secured Tax Claim | **Unimpaired.** Subject to the provisions of Article 7 of the Plan, with respect to Disputed Claims, in full satisfaction, release and discharge of Class 2 claims, NYC shall receive, on the Effective Date, cash in the full amount of its Allowed Class 2 Claim, inclusive of interest at the statutory rate. |
| Class 3 $2,978,596.09 in accordance with Notice of Assignment of Claim | HSBC Secured Claim assigned to Cortland Services V, LLC | **Unimpaired.** Subject to the provisions of Article 7 of the Plan, with respect to Disputed Claims, in full satisfaction, release and discharge of Class 3 claims, the Cortland note shall be reinstated pursuant to 11 U.S.C. Section 1124(2) and all payments required to reinstate the Cortland note shall be made on the Effective Date. Subsequent to the Effective Date, payments shall be made in accordance with terms of the Cortland note, or as otherwise agreed to in writing between the Debtor and Cortland. Cortland shall retain its liens on the Property until payment is made in full in accordance with the terms of the reinstated note. |
| Class 4 $1,347,047.37 in accordance with Notice of Assignment of Claim | SBA Secured Claim assigned to Grandview Ventures 36, LLC | **Unimpaired.** Subject to the provisions of Article 7 of the Plan, with respect to Disputed Claims, in full satisfaction, release and discharge of Class 3 claims, the Grandview note shall be reinstated pursuant to 11 U.S.C. Section 1124(2) and all payments required to reinstate the Grandview note shall be |

---

[3] Motion for Order Lifting Automatic Stay filed by Cortland Services V, LLC, as assignee of HSBC Bank sets forth that HSBC "was compelled to pay unpaid real estate taxes, water charges and insurance premiums in the amount of $447,388 which are also due to the Mortgagee in addition to the mortgage arrears." To the extent the NYC secured tax claim has been satisfied as a result of this payment by HSBC, this claim amount should be reduced to zero.

| Class and Estimated Amount[2] | Type of Claim or Equity Interest | Summary of Treatment |
|---|---|---|
| | | made on the Effective Date. Subsequent to the Effective Date, payments shall be made in accordance with terms of the Grandview note, or as otherwise agreed to in writing between the Debtor and the holder of such claim. Grandview shall retain its liens on the Property until payment is made in full in accordance with the terms of the reinstated note. |
| Class 5<br>Scheduled at $94,300 | M. Just Architecture Mechanic's Lien | **Unimpaired**. Subject to the provisions of Article 7 of the Plan, with respect to Disputed Claims, in full satisfaction, release and discharge of the Class 5 claim, the M. Just Architecture Mechanic's Lien shall be paid in Cash in full on the Effective Date, or as otherwise agreed to in writing between the Debtor and the holder of such claim. |
| Class 6<br>Scheduled in the amount of $323,929.71 | General Unsecured Creditors | **Unimpaired. .** Subject to the provisions of Article 7 of the Plan with respect to Disputed claims, in full satisfaction, release and discharge of the Unsecured Claims, the holder of an Unsecured Claim shall receive 100% of their Allowed Claim in four (4) annual installments as follows: 25% on the Effective Date; 25% on the first anniversary of the Effective Date; 25% on the 2nd anniversary of the Effective Date; and 25% on the 3rd anniversary of the Effective Date, plus interest. |
| Class 7 | Allowed Interests | **Impaired.** On the Effective Date, all Allowed Interests in the Debtor shall be extinguished. The Debtor's shareholders shall be the 50% equity holders of the purchaser of the Debtor's Property and shall personally guarantee all of the payments required under the Plan. |

## CONFIRMATION OF THE PLAN

Pursuant to section 1128 of the Bankruptcy Code, the Bankruptcy Court has scheduled a hearing to consider Confirmation of the Plan, on _____ at _____, Eastern Standard Time, in the United States Bankruptcy Court, One Bowling Green, New York, New York 10004. The Bankruptcy Court has directed that objections, if any, to Confirmation of the Plan be filed and served on or before _____ at _____ EST.

At the Confirmation Hearing, the Bankruptcy Court will determine whether the requirements of section 1129(a) of the Bankruptcy Code have been satisfied, in which event the Bankruptcy Court will enter an order confirming the Plan. The Debtor intends to seek Confirmation of the Plan at the Confirmation Hearing. **The Debtor believes that the Plan satisfies all applicable**

**requirements of section 1129(a) and section 1129(b) of the Bankruptcy Code**. Confirmation makes the Plan binding upon the Debtor, its Interest Holders, all Creditors and other parties regardless of whether they have accepted the Plan.

With the entry of the Confirmation Order, pursuant to section 1141(d) of the Bankruptcy Code, except as otherwise provided in the Plan, the distributions provided for in the Plan will be in exchange for and in complete satisfaction, discharge and release of all Claims against or Interests in the Debtor or any of its assets or properties, including any Claim or Interest accruing after the Petition Date and before the Confirmation Date. As of the Effective Date, all holders of Claims or Interests will be precluded from asserting any Claim against the Debtor or its assets or properties or other interests in the Debtor based on any transaction or other activity of any kind that occurred before the Confirmation Date except as otherwise provided in the Plan.

## NOTICES TO HOLDERS OF CLAIMS AND INTERESTS

This disclosure statement and accompanying notification of non-voting status is being furnished by the Debtor to the Debtor's known creditors and interest holders pursuant to section 1125(b) of the bankruptcy code. A copy of the Plan is included in this package and is incorporated herein by reference.

## NO VOTING – SUMMARY

**THE PLAN PROVIDES FOR PAYMENT IN FULL TO EACH CLASS OF CREDITORS. AS EACH CLASS OF CLAIMS IS UNIMPAIRED, HOLDERS OF CLAIMS ARE NOT BEING SOLICITED, ARE NOT ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN AND ARE DEEMED TO HAVE ACCEPTED THE PLAN. AS ALL ALLOWED INTERESTS IN THE DEBTOR SHALL BE EXTINGUISHED ON THE EFFECTIVE DATE OF THE PLAN, EQUITY HOLDERS ARE DEEMED TO HAVE REJECTED THE PLAN.**

**THIS DISCLOSURE STATEMENT HAS BEEN PREPARED BY THE DEBTOR. THE STATEMENTS AND OPINIONS SET FORTH HEREIN ARE THOSE OF THE DEBTOR, AND NO OTHER PARTY HAS ANY RESPONSIBILITY WITH RESPECT THERETO.**

**THE PLAN HAS NOT BEEN APPROVED OR DISAPPROVED BY ANY BANKRUPTCY COURT, THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION NOR HAS THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION PASSED UPON THE**

**FAIRNESS OR MERITS OF THE PLAN OR UPON THE ACCURACY OR ADEQUACY OF THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT. ANY REPRESENTATION TO THE CONTRARY IS UNLAWFUL.**

The historical information concerning the Debtor has been prepared using the Debtor's books and records and certain filings made with the Bankruptcy Court. The estimates of Claims and Interests set forth herein may vary from the final amounts of Claims or Interests allowed by the Bankruptcy Court. While every effort has been made to ensure the accuracy of all such information, except as noted in the Disclosure Statement, the information presented herein is unaudited and has not been examined, reviewed or compiled by the Debtor's independent public accountants. The ultimate extent of the secured claims against the Debtor's property will depend upon the valuation of the Debtor's property and the application of section 506 of the Bankruptcy Code.

Notwithstanding any provision of the Plan to the contrary, definitions and descriptions contained herein respecting pre-Petition Date documents, agreements, or claims are provided solely for the purpose of identification and classification thereof and do not constitute an admission by the Debtor of the existence, validity, allowance, or amount of any such claim, document or agreement. The Debtor expressly reserves the right to challenge the existence, validity, allowance, or amount of any such claim, document or agreement.

This Disclosure Statement contains a summary of certain provisions of the Plan and the transactions contemplated thereunder, as well as descriptions of certain other related documents. While the Debtor believes that these summaries are fair and accurate, such summaries are qualified to the extent that they do not set forth the entire text of such documents. Reference is made to the Plan and the documents referred to herein and therein for a complete statement of the terms and provisions thereof. In the event of any inconsistency between the terms of the Plan and this Disclosure Statement, the terms of the Plan shall be controlling. In reviewing the Plan and this Disclosure Statement, the reader should give special attention to "RISK FACTORS." No statements or information concerning the Debtor or its assets, results of business operations or financial condition are authorized by the Debtor other than as set forth in this Disclosure Statement and the exhibits hereto (including the Plan).

The statements contained in this Disclosure Statement are made as of the date hereof unless another time is specified herein. The delivery of this Disclosure Statement shall not create, under any circumstances, an implication that there has been no change in the facts set forth herein since the date hereof.

This Disclosure Statement is intended for the sole use of Creditors and Interest Holders to be informed about the Plan. Each holder of a Claim or Interest should review this

Disclosure Statement and all exhibits hereto (including the Plan). Holders of Claims or Interests are urged to consult with their own legal and financial advisors.

No Person has been authorized to use or promulgate any information concerning the Debtor or its business or the Plan, other than the information contained in this Disclosure Statement and the exhibits hereto. You should not rely on any information relating to the Debtor or its business or the Plan other than that contained in this Disclosure Statement and the exhibits hereto.

### PROPONENT'S RECOMMENDATION

In the Debtor's opinion, the treatment of Creditors and Interest Holders under the Plan provides a greater recovery than is likely to be achieved under any other alternatives, including liquidation under Chapter 7. See "ALTERNATIVES TO THE PLAN." The Plan as proposed provides for payment in full to each class of creditors. The Debtor believes that in a chapter 7 liquidation, administrative costs will be greater, and it is unlikely that unsecured creditors would receive any distribution on account of their Claims greater than as provided under the Plan.

**THE DEBTOR BELIEVES THAT CONFIRMATION OF THE PLAN IS IN THE BEST INTERESTS OF CREDITORS AND INTEREST HOLDERS.**

### THE DEBTOR

**THE DEBTOR**

The Debtor is a corporation that was established in December 2002 to acquire the Property. The original purchase price of the Property was approximately $400,000 which was funded by the Debtor's shareholders cashing in certain life insurance policies.

The equity interests in the Debtor are owned 50% by Richard Anzarouth, the Debtor's Vice President and 50% by Edward Anzarouth, the Debtor's President. The Debtor is a single asset real estate entity as defined in 11 U.S.C. Section 101(51B).

**THE PROPERTY DEBT**

<u>The HSBC Debt</u>

On or about December 12, 2002, HSBC advanced the sum of $2,390,000 to the Debtor pursuant to a Mortgage Note which bore interest at the rate of 5.79% per annum. The maturity date of the note is January 1, 2013. To secure the indebtedness, the Debtor executed a mortgage in favor of HSBC with respect to the Property.

Richard Anzarouth and Edward Anzarouth each executed personal guarantees in favor of HSBC

In April 2008, HSBC commenced an action to foreclose the mortgage in New York State Supreme Court, Bronx County. The Supreme Court entered an order appointing a receiver, who has continued to collect rents at the Property. As of March 31, 2011, the Receiver held cash on hand in the amount of $71,846.31. Prior to entry of a judgment in the foreclosure action, the Debtor filed its chapter 11 petition.

HSBC assigned its mortgage to Cortland Services V, LLC on March 3, 2011.

The BIC/SBA Debt

On or about December 12, 2002, the SBA advanced the sum of $1,300,000 to the Debtor pursuant to a Note. The maturity date of the SBA note is March 1, 2023. To secure the indebtedness, the Debtor executed a second mortgage in favor of the Bronx Initiative Corporation with respect to the Property.

Richard Anzarouth and Edward Anzarouth each executed personal guarantees in favor of the SBA.

The SBA assigned its mortgage to Grandview Ventures 36, LLC on March 3, 2011.

Dunkin Donuts

Pursuant to a lease agreement between the Debtor as landlord and Dorox International Corporation as tenant, a portion of the Property consisting of approximately 2,270 square feet is leased to operate a Dunkin Donuts. The approximate amount of monthly rent due under such lease is $7,942.20. The Debtor intends to assume this lease pursuant to the Plan and Section 365 of the Bankruptcy Code and assign it to the Purchaser.

CVS

Pursuant to a lease agreement between the Debtor and C.V.S. Albany, LLC, dated October 14, 2008, CVS was to lease a portion of the Property consisting of approximately 13,225 square feet of the ground floor and 3700 square feet on the basement floor of the Property. The Debtor was to perform certain renovations to the premises to accommodate a CVS pharmacy and convenience store. The Debtor was unable to perform the required buildout. The CVS lease is

currently being renegotiated. The Purchaser of the Property will be required to renovate the CVS premises and once construction is completed, CVS will commence rental payments. It is anticipated that the construction will take approximately 8 -12 months and is estimated to cost between $1.1 and $1.5 million to complete. The Debtor will assume this lease pursuant to the Plan and Section 365 of the Bankruptcy Code and assign it to the Purchaser.

### DECISION TO COMMENCE THIS CASE

The Debtor was unable to finance the required construction in connection with the CVS lease which resulted in cash flow shortfalls and the default in payments on the mortgages encumbering the Property. Debtor commenced extensive and lengthy negotiations with HSBC with respect to resolving the foreclosure proceeding, but failed to reach a consensual resolution, resulting in the Debtor seeking bankruptcy court protection to preserve the value of the Property.

### PURCHASER/SALE INFORMATION

The Property will be sold to the Purchaser for approximately $6 million dollars as follows: cash consideration of $1.6 million; assumption of the reinstated Cortland and Grandview mortgages in the aggregate amount of $3.2 million (after reinstatement); and a new construction loan of at least $1 million dollars to be evidenced by a mortgage, subject to valid existing liens on the Property. Post confirmation, the Purchaser will be obligated to pay the Cortland and Grandview notes and the construction loan in accordance with their terms. The $1.6 cash component of the purchase price will be utilized to reinstate the Cortland and Grandview mortgages, fund the initial renovation and satisfy plan payments due on the Effective Date, including the initial payment to unsecured creditors. Any balance remaining thereafter will be used to capitalize the Purchaser for us in paying its ongoing post confirmation obligations until the CVS rental income stream commences.

Purchaser has represented to the Debtor that it has the cash component of $1.6 million dollars available.

## SIGNIFICANT EVENTS IN THE CHAPTER 11 CASE

### RETENTION OF PROFESSIONALS

Section 327(a) of the Bankruptcy Code provides that the Debtor, with the court's approval, may employ one or more accountants or other professional persons that do not hold or

represent an interest adverse to the estate and that are disinterested persons to represent or assist the Debtor in carrying out its duties under the Bankruptcy Code. 11 U.S.C. § 327(a).

In accordance with an order of the Bankruptcy Court, the Debtor has retained the firm of Robinson Brog Leinwand Greene Genovese & Gluck P.C. as its bankruptcy counsel. As of the date hereof, Robinson Brog is the only professional retained by the Debtor.

## OPERATING REPORTS

Pursuant to the requirements of the Office of the United States Trustee for the Southern District of New York, the Debtor will prepare and file monthly operating reports with the Bankruptcy Court detailing the results of the Debtor's ongoing business operations. Debtor has requested an accounting from the receiver appointed to collect the rents at the Property so that it may supplement its operating reports to the extent the Receiver is collecting rental income and/or making disbursements on the Debtor's behalf. Copies of such reports may be obtained from the Bankruptcy Court during normal business hours, or may be obtained upon written request made to counsel for the Debtor.

## BAR DATE

In accordance with the requirements of section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, the Debtor filed its Schedules of its assets and liabilities, including schedules of all of its known creditors and the amounts and priorities of the Claims the Debtor believes are owed to such creditors. Pursuant to section 501 of the Bankruptcy Code any creditor or interest holder may file a Proof of Claim or Interest and, unless disputed, such filed Proof of Claim or Interest supersedes the amount and priority set forth in the Debtor's schedules. The Debtor is preparing an application, in accordance with the Court's guidelines, requesting that the Court fix a deadline for the last date for filing Proofs of Claim and Proofs of Interest in the Debtor's case ("Bar Date").

## SUMMARY OF THE PLAN

The following summary of the terms of the Plan is qualified in its entirety by reference to the provisions of the Plan, a copy of which accompanies this Disclosure Statement and which is incorporated herein by reference.

**Classification of Claims and Interests**

Article 3 of the Plan classifies the various Claims against and Interests in the Debtor into six (6) classes of Claims and one (1) class of Interests:

Class 1  -   Priority Claims
Class 2  -   NYC Secured Tax Claim
Class 3 -    HSBC Secured Claim assigned to Cortland Services V, LLC
Class 4 -    SBA Secured Claim assigned to Grandview Ventures 36 LLC
Class 5-     M. Just Architecture Mechanic's Lien
Class 6 -    Unsecured Claims
Class 7 -    Allowed Interests

*Unimpaired Classes*

All Claims in Classes 1 through 6 are unimpaired under the Plan. The votes of Holders of Claims in such Classes are therefore NOT being solicited, are NOT entitled to vote to accept or reject the Plan and are deemed to have accepted the Plan.  As set forth in Article 2 of the Plan, pursuant to section 1123(a)(1) of the Bankruptcy Code, certain Administrative Claims against the Debtor have not been classified.  See "SUMMARY OF THE PLAN -- Treatment of Non-Classified Claims."

*Impaired Class*

As all Allowed Interests in the Debtor shall be extinguished on the Effective Date of the Plan, Class 7 Allowed Interest holders are impaired and are deemed to have rejected the Plan.

**Class 1 - Priority Claims.**  Class 1 consists of all Allowed Claims, other than Administrative Claims or Bankruptcy Fees, to the extent entitled to priority under section 507 of the Bankruptcy Code.  Claims that may be classified in Class 1 may include, for example, certain claims of employees of the Debtor for wages, salaries and commissions or contributions to employee benefit plans up to an aggregate amount of $10,000 per employee.  Certain Claims for taxes and the payment of expenses incurred by the Debtor subsequent to the Petition Date are entitled to priority under section 507 of the Bankruptcy Code, and are treated elsewhere as non-classified Claims.  See "SUMMARY OF THE PLAN -- Treatment of Non-Classified Claims."  The Debtor believes that the total claims in this class aggregate less than $1,000.

**Class 2 - NYC Secured Tax Claim.** Class 2 consists of NYC Secured Tax Claim[4].

---

[4] Motion for Order Lifting Automatic Stay filed by Cortland Services V, LLC, as assignee of HSBC Bank sets forth that HSBC "was compelled to pay unpaid real estate taxes, water charges and insurance premiums in the amount of

{00533477.DOC;1 }

**Class 3 – Cortland Secured Claim.** Class 3 consists of the secured claim of HSBC assigned to Cortland Services V, LLC..

**Class 4 – SBA Secured Claim.** Class 4 consists of the secured claim of SBA assigned to Grandview Ventures 36 LLC.

**Class 5 – M. Just Architecture Lien.** Class 5 consists of the mechanic's lien of M. Just Architecture.

**Class 6 – Unsecured Claims**. Class 6 consists of all Unsecured Claims against the Debtor.

**Class 7** - **Allowed Interests.** Class 7 consists of the Allowed Interests in the Debtor.

TREATMENT OF CLAIMS AND INTERESTS CLASSIFIED UNDER THE PLAN

Article 4 of the Plan provides for the treatment of Claims and Interests classified in Article 3 of the Plan as follows: Each class of Claims and Interests shall receive the following treatment under the Plan:

**Class 1 - Priority Claims.** Subject to the provisions of Article 7 of the Plan, with respect to Disputed Claims, in full satisfaction, release and discharge of the Priority Claims, the holders of Priority Claims shall receive the following treatment: on the Effective Date, or as soon as practicable after such Claims become Allowed Claims, each holder of a Priority Claim shall receive payment from the Disbursing Agent, (i) in Cash, in the full amount of its Priority Claim, or (ii) as may be otherwise agreed in writing between the Debtor and the holder of such Claim.

**Class 2 – NYC Secured Tax Claim.** Subject to the provisions of Article 7 of the Plan, with respect to Disputed Claims, in full satisfaction, release and discharge of the NYC Secured Tax Claim, the holder of the NYC Secured Tax Claim shall receive the following treatment: on the Effective Date, or as soon as practicable after the NYC Secured Tax Claim becomes an Allowed Claim, the holder of the NYC Secured Tax Claim shall receive payment from the Disbursing Agent, (i) in Cash, in the full amount of its NYC Secured Tax Claim, or (ii) as may be otherwise agreed in writing between the Debtor and the holder of such Claim.[5]

---

$447,388 which are also due to the Mortgagee in addition to the mortgage arrears." To the extent the NYC secured tax claim has been satisfied as a result of this payment by HSBC, this claim amount should be reduced to zero.

[5] Motion for Order Lifting Automatic Stay filed by Cortland Services V, LLC, as assignee of HSBC Bank sets forth that HSBC "was compelled to pay unpaid real estate taxes, water charges and insurance premiums in the amount of

**Class 3 – Cortland Secured Claim.** Subject to the provisions of Article 7 of the Plan, with respect to Disputed Claims, in full satisfaction, release and discharge of Class 3 claims, the Cortland Note shall be reinstated pursuant to 11 U.S.C. Section 1124(2) and payments required to reinstate the Cortland Note shall be made on the Effective Date. Subsequent to the Effective Date, payments shall be made in accordance with the terms of the reinstated note, or as otherwise agreed to in writing between the Debtor and Cortland, and Cortland shall retain its liens on the Property until payment is made in full in accordance with the terms of the reinstated note.

**Class 4 – Grandview Secured Claim.** Subject to the provisions of Article 7 of the Plan, with respect to Disputed Claims, in full satisfaction, release and discharge of Class 4 claims, the Grandview Note shall be reinstated pursuant to 11 U.S.C. Section 1124(2) and payments required to reinstate the Grandview Note shall be made on the Effective Date. Subsequent to the Effective Date, payments shall be made in accordance with the terms of the reinstated note, or as otherwise agreed to in writing between the Debtor and Grandview, and Grandview shall retain its liens on the Property until payment is made in full in accordance with the terms of the reinstated note.

**Class 5 – Architect's Lien.** Subject to the provisions of Article 7 of the Plan, with respect to Disputed Claims, in full satisfaction, release and discharge of Class 5 claims, the M. Just Architecture Mechanic's Lien shall be paid in Cash in full on the Effective Date, or as otherwise agreed to in writing between the Debtor and the holder of such claim

**Class 6 – Unsecured Claims.** Subject to the provisions of Article 7 of the Plan, with respect to Disputed Claims, in full satisfaction, release and discharge of the Unsecured Claims, the holder of an Unsecured Claim shall receive 100% of their Allowed Claim in four (4) annual installments as follows: 25% on the Effective Date; 25% on the first anniversary of the Effective Date; 25% on the 2nd anniversary of the Effective Date; and 25% on the 3rd anniversary of the Effective Date, plus interest.

**Class 7 - Allowed Interests.** On the Effective Date, all Allowed Interests shall be retained.

### TREATMENT OF NON-CLASSIFIED CLAIMS

Pursuant to section 1123(a)(1) of the Bankruptcy Code, the Plan does not classify Administrative Claims entitled to priority treatment under section 507(a)(2) of the Bankruptcy Code

---

$447,388 which are also due to the Mortgagee in addition to the mortgage arrears." To the extent the NYC secured tax claim has been satisfied as a result of this payment by HSBC, this claim amount should be reduced to zero.

or Claims of Governmental Units entitled to priority pursuant to section 507(a)(8) of the Bankruptcy Code. Article 2 of the Plan provides for the manner of treatment of such non-classified Claims.

**Administrative Claims.** Administrative Claims are the costs and expenses of administration of this Case, allowable under section 503(b) of the Bankruptcy Code, other than Bankruptcy Fees. Administrative Claims include Claims for the provision of goods and service to the Debtor after the Petition Date, the liabilities incurred in the ordinary course of the Debtor's business (other than claims of governmental units for taxes or interest or penalties related to such taxes) after the Petition Date, Claims of professionals, such as attorneys, appraisers, and accountants, retained pursuant to an order of the Bankruptcy Court, for compensation and reimbursement of expenses under section 330 of the Bankruptcy Code, and tax claims for the period from the Petition Date to the Effective Date of the Plan.

Each Administrative Claim, to the extent not previously paid, shall be paid by the Disbursing Agent in Cash in full on (i) the later of the Effective Date, the date payment of such Claim is due under the terms thereof or applicable law, or three business days after such Claim becomes an Administrative Claim or (ii) as may be otherwise mutually agreed in writing between the Disbursing Agent and the holder of such Claim; *provided, however,* that any Administrative Claim incurred by the Debtor in the ordinary course of its business shall be paid in full in accordance with the terms and conditions of the particular transaction giving rise to such Administrative Claim and any agreements relating thereto.

Article 2 of the Plan sets a final date for the filing of Administrative Claims against the Debtor. The Administrative Bar Date is the first Business Day that is at least 60 days after the Effective Date.

Section 330 of the Bankruptcy Code sets the standard for the determination by the Bankruptcy Court of the appropriateness of fees to be awarded to Professionals retained by the Debtor and the Committee in a case under the Bankruptcy Code. In general, bankruptcy legal services are entitled to command the same competency of counsel as other cases. "In that light, the policy of this section is to compensate attorneys and other professionals serving in a case under title 11 at the same rate as the attorney or other professional would be compensated for performing comparable service other than in a case under title 11." 124 Cong. Rec. H11091 (Daily ed. Sept. 28, 1978).

**Bankruptcy Fees.** All fees and charges assessed against the Debtor under section 1930 of title 28 of the United States Code shall be paid by the Disbursing Agent in Cash in full as required by statute.

**Professional Fees.** Reasonable compensation due to the Debtors' professionals pursuant to section 330 of the Bankruptcy Code, as determined by the Bankruptcy Court, shall be

payable in full and in Cash on the Effective Date unless otherwise agreed to in writing between the holder of such claim and the Debtor and approved by the Bankruptcy Court. Unless otherwise agreed to in writing by the Debtor and the applicable professional, each professional must serve the Debtor with a writing indicating the sum of fees and expenses they intend to apply to the Court for reimbursement of and/or an award of, no later than three days prior to the Effective Date. Upon receipt of such notice, the Debtor must escrow sufficient funds, to be held in an interest bearing segregated account, in the amounts necessary to pay such claims when and if allowed by the Court.

**Priority Tax Claims.** Except as may be otherwise mutually agreed in writing, all Allowed Claims of Governmental Units entitled to priority pursuant to section 507(a)(8) of the Bankruptcy Code, shall be paid in full and receive on account of such claim, Cash in the amount of such Allowed Claim in equal annual installments ending not later than 3 years after the Petition Date, together with applicable statutory interest, from the Debtor.

## DISPUTED CLAIMS AND INTERESTS

Article 7 of the Plan contains a mechanism for resolving disputes concerning the amount of certain Claims or Interests asserted against the Debtor by any Entity.

**Time to Object.** Unless otherwise ordered by the Bankruptcy Court, objections to the allowance of any Claim or Interest may be filed no later than the later to occur of (i) 60 days after the Effective Date or (ii) 60 days after the date proof of such Claim or Interest is filed. Until the earlier of (i) the filing of an objection to a Proof of Claim or Interest or (ii) the last date to file objections to Claims or Interests as established by the Plan or by Final Order, Claims or Interests shall be deemed to be Disputed in their entirety if, (i) the amount specified in a Proof of Claim or Interest exceeds the amount of any corresponding Claim or Interest listed in the Schedules; (ii) any corresponding Claim or Interest listed in the Schedules has been scheduled as disputed, contingent or unliquidated; or (iii) no corresponding Claim or Interest has been listed in the Schedules.

## DISTRIBUTIONS UNDER THE PLAN

Article 7 contains provisions governing the making of distributions on account of Claims and Interests. In general, any payments, distributions or other performance to be made pursuant to the Plan on account of any Allowed Claim or Allowed Interest shall be deemed to be timely made if made on or within five days following the later of (i) the Effective Date or (ii) the expiration of any applicable objection deadline with respect to such Claim or Interest or (iii) such other times provided in the Plan. All Cash payments to be made by the Debtor pursuant to the Plan shall be made by check drawn on a domestic bank.

**Disbursing Agent.** The Debtor shall be the Disbursing Agent to make distributions under the Plan for all claims. The Disbursing Agent shall not be compensated for services rendered under the Plan. Pursuant to the terms of the Plan, the Disbursing Agent shall post a bond in an amount mutually agreed to by the Debtor and the United States Trustee or, absent such agreement, as fixed by the Bankruptcy Court at the Confirmation Hearing.

Distributions shall be made: (1) at the addresses set forth on the Proofs of Claim or Proofs of Interests filed by such holders; (2) at the addresses set forth in any written notices of address changes delivered to the Disbursing Agent after the date of any related Proof of Claim or Proof of Interest; or (3) at the address reflected in the Schedules if no Proof of Claim or Proof of Interest is filed and the Disbursing Agent has not received a written notice of a change of address. If the distribution to the holder of any Claim or Interest is returned to the Disbursing Agent as undeliverable, no further distribution shall be made to such holder unless and until the Disbursing Agent is notified in writing of such holder's then current address. Neither the Debtor not the Disbursing Agent shall be required to attempt to locate any holder of an Allowed Claim or an Allowed Interest.

## UNCLAIMED DISTRIBUTIONS

Any Cash or other property to be distributed under the Plan shall revert to the Debtor and such creditor shall forfeit its right to receive any distribution(s) under this Plan if such distribution is not claimed by the Entity entitled thereto before the later of (i) 1 year after the Effective Date or (ii) 60 days after an Order allowing the Claim of that Entity becomes a Final Order or are otherwise Allowed.

## DISTRIBUTIONS WITH RESPECT TO DISPUTED CLAIMS

While an objection to any Claim or Interest is pending, no distribution under the Plan will be made to the holder of such Claim or Interest. However, subject to the restrictions set forth in the next paragraph, there will be set aside and reserved on behalf of such disputed Claim or Interest such cash or property as the holder thereof would be entitled to receive in the event such Claim or Interest was an Allowed Claim or an Allowed Interest on the date of such distribution. The Debtor may seek an order of the Bankruptcy Court estimating or limiting the amount of Cash or property that must be deposited in respect of any such disputed Claims or Interests. Cash held in reserve for disputed Claims will be held in trust for the benefit of the holders of such Claims.

The amount to be so segregated on behalf of Disputed Claims depends upon whether such claim is an Unsecured Claim or a claim other than an Unsecured Claim. If a Disputed Claim is not an Unsecured Claim, the Disbursing Agent shall segregate Cash equal to 100% of the amount which would be distributed on account of such Disputed Claim if such Claim had been an Allowed

Claim but for the pendancy of the objection. Until such the dispute over the claim is resolved, the Disbursing Agent shall also segregate any interest or dividends earned upon such amount it is holding on account of such Disputed Claim.

If the Disputed Claim would have been an Allowed Unsecured Claim but for the pendancy of such objection, the Disbursing Agent shall be obligated to segregate an amount equal to 100% of the amount which would have been distributed on account of such Claim if such Claim had been an Allowed Claim on such date. Deposits in escrow on account of any Disputed Unsecured Claims shall be made annually thereafter, at least ten days prior to the anniversary of the Effective Date until all pending disputes are resolved. The Disbursing Agent shall also hold any interest or dividends earned on such funds until the dispute over such claim is resolved.

Within 30 days after the entry of a Final Order resolving an objection to a Disputed Claim, the Disbursing Agent shall distribute all Cash or other property held in escrow with respect to such claim, including any interest, dividends or proceeds thereof, to which a holder is then entitled with respect to any formerly Disputed Claim that has become an Allowed Claim. To the extent practicable, the Disbursing Agent may invest any Cash or other property segregated on account of a Disputed Claim, Disputed Interest, undeliverable distribution, or any proceeds thereof; however, the Disbursing Agent shall be under no obligation to so invest such Cash or proceeds and shall have no liability to any party for any investment made or any omission to invest such Cash, other property or proceeds. Any segregated amounts remaining after all Disputed Claims and Interests have been resolved will be retained by the Debtor.

## SURRENDER OF INSTRUMENTS

Notwithstanding the foregoing, no Creditor that holds a note or other instrument of the Debtor evidencing such Creditor's Claim may receive any distribution with respect to such Claim or Interest unless and until the note or other instrument evidencing such Claim is surrendered pursuant to the provisions of the Plan. In the event an instrument evidencing a claim has been lost, stolen or mutilated, the Disbursing Agent may request reasonable affidavits and indemnification by a finically responsible party before making any distribution(s) to such Creditor.

## COMPLIANCE WITH TAX REQUIREMENTS

In connection with the Plan, the Disbursing Agent shall comply with all withholding and reporting requirements imposed by federal, state and local taxing authorities and distributions under the Plan shall be subject to such withholding and reporting requirements.

## EFFECTIVE DATE

The Effective Date of the Plan is defined as the first business day after the Closing.

**TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

Effective on and as of the Effective Date, any and all of Executory Contracts and Unexpired Leases to which the Debtor is a party which (i) have not expired or terminated pursuant to their own terms, or (ii) have not previously been assumed, or assumed and assigned or rejected pursuant to an order of the Bankruptcy Court on or prior to the Confirmation Date, or (iii) are not the subject of pending motions to assume or reject as of the Confirmation Date or (iv) are not specified in the list of Executory Contracts and Unexpired Leases to be assumed pursuant to the plan are hereby specifically rejected.

The CVS lease, the Dunkin Donuts lease and the contract for the sale of the Property are expressly assumed.

**Assumption Cure Payments**. Subject to the provisions of Section 5.3 of the Plan, any Cash required to be paid to cure any monetary default under any Executory Contract or Unexpired Lease to be assumed pursuant to Section 5.1 of the Plan shall be paid in Cash on the Effective Date from the Debtor.

With respect to each Executory Contract to be assumed pursuant to Section 5.1 of the Plan, in the event a dispute is pending regarding (i) the amount of the Cure Amount, (ii) adequate assurance of future performance, or (iii) any other matter pertaining to assumption of such Executory Contract, then no payments shall be made to cure any default under such Executory Contract until the entry of a Final Order resolving such dispute. At any time while such dispute is pending, the Debtor may file with the Bankruptcy Court a notice rejecting such executory contract or lease in which case such contract or lease shall be deemed rejected on the Effective Date and any claim arising from such rejection shall be treated as a pre-petition claim.

A Proof of Claim or request for payment of an Administrative Expense with respect to any Claim arising from, or in connection with, the assumption of an Executory Contract or Unexpired Lease (including, but not limited to, any Cure Amount arising under section 365(b)(1) of the Bankruptcy Code) shall not be timely filed unless it is filed with the Bankruptcy Court and served so that it is received by the Debtor within 30 days after the later of (i) the date of entry of a Final Order approving such assumption, or (ii) the Confirmation Date. Any such Proof of Claim or request for payment of an Administrative Expense not timely filed and served shall be forever barred from assertion and may not be enforced against the Debtor or its successors or its respective properties, and shall be, in all respects subject to the provisions of Article 7 thereof. The Debtor intends to request that the foregoing limitation on the filing of requests for payment of Administrative Expenses be included in the Confirmation Order. In such claim, notice of such limitation will be served upon the parties adversely affected thereby.

**Rejection Claims**. Allowed Claims arising from the rejection of any Executory Contract or Unexpired Lease of the Debtor pursuant to the Plan shall be treated as Unsecured Claims. A Proof of Claim with respect to any Unsecured Claim for damages arising from the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan shall not be timely filed unless it is filed with the Bankruptcy Court and served so that it is received by the Disbursing Agent within 30 days after the later of (i) the date of entry of a Final Order approving such rejection (unless such Final Order expressly provides a Bar Date with respect to such Claim, in which event no Proof of Claim with respect to such Claim shall be deemed timely unless it is filed with the Bankruptcy Court and served in the manner provided in such Final Order), or (ii) the Confirmation Date. Any such Claim not timely filed and served shall be forever barred from assertion and may not be enforced against the Debtor, or its successors or its respective properties. The Debtor intends to request that the foregoing limitation on the filing of claims be included in the Confirmation Order. In such claim, notice of such limitation will be served upon the parties adversely affected thereby.

## PRESERVATION OF RIGHTS OF ACTION

The Debtor shall retain, and in accordance with its determination of the best interest of the estate, may enforce any claims, rights and causes of action (i) arising under sections 544 through 550 of the Bankruptcy Code or (ii) belonging to the Debtor as of the Petition Date, or the Estate, and arising under any provision of state or federal law, or any theory of statutory or common law or equity. The Debtor does not, at the present time, anticipate that any such avoiding actions will be pursued post-confirmation.

Notwithstanding any provision of the Plan to the contrary, definitions and descriptions contained herein respecting pre-Petition Date documents, agreements or claims are provided solely for the purpose of identification and classification thereof and do not constitute an admission by the Debtor of the existence, validity allowance, or amount of any such claim, document or agreement. The Debtor expressly reserves the right to challenge the existence, validity allowance, or amount of any such claim, document or agreement.

## POST-CONFIRMATION OPERATING REPORTS AND UNITED STATES TRUSTEE'S FEES

The Debtor shall be responsible for the preparation and filing of ~~operating reports~~ monthly operating reports and post-confirmation status reports in accordance with Local Bankruptcy Rule 3020-1 which post-confirmation status reports shall be filed on January 15th, April 15th, July 15th and October 15th until entry of a final decree ~~in~~, dismissal or conversion of this case, whichever is earlier. Quarterly fees payable to the Office of the United States Trustee shall be paid by the Debtor until entry of a final decree ~~in~~, dismissal or conversion of this case, whichever is earlier.

## TRANSFER TAXES

Pursuant to section 1146(a) of the Bankruptcy Code, the initial issuance, transfer, or exchange of any security and the making or delivery of any instrument of transfer in connection with or in furtherance of the Plan (including any instrument executed in furtherance of the transactions contemplated by the Plan including but not limited to the sale of the Debtor's Property to Purchaser and any mortgage obtained in connection with the construction loan) shall be exempt and shall not be subject to tax under any law imposing a Transfer Tax, mortgage recording tax or similar tax as set forth in the Plan.

## REVOCATION OF THE PLAN

The Debtor may revoke or withdraw the Plan at any time prior to entry of the Confirmation Order.  If the Debtor revokes or withdraws the Plan, or if no Confirmation Order is entered, the Plan shall be null and void, and nothing contained in the Plan shall constitute a waiver or release of any Claims by or against, or any Interest in, the Debtor; or prejudice in any manner the rights of the Debtor in any further proceedings involving the Debtor.

## RETENTION OF JURISDICTION

The Plan contains detailed provisions providing for the retention of jurisdiction by the Bankruptcy Court over the Case for the purposes of, *inter alia,* determining all disputes relating to Claims or Interests and other issues presented by or arising under the interpretation, implementation or enforcement of the Plan.

## RISK FACTORS

The Plan provides for substantial reinstatement payments to be made on the Effective Date and thereafter for payments to be made to unsecured creditors over time. Although the Debtor and Purchaser believe that it will be able to meet all of the obligations that it is undertaking pursuant to the Plan, there can be no assurance that future events will not cause the Debtor or Purchaser to default on one or more of its obligations under the Plan.  Each Creditor, Interest Holder and their respective advisers should consider the following factors (and other risks considered elsewhere in this Disclosure Statement).

All distributions to Creditors are contingent on the Plan being confirmed by this Court.  Otherwise, the Debtor is not obligated, in any way, to make the payments required hereunder. Notwithstanding Confirmation of the Plan, there is some risk that sale transaction will not occur.

As noted herein, Claims in Classes 1, 2, 3, 4, 5 and 6 are not impaired by the Plan. Accordingly, holders of claims in classes 1, 2, 3, 4, 5 and 6 are deemed to have accepted the Plan and votes of holders of Claims in these classes will not be solicited. As all Allowed Interests in the Debtor shall be extinguished on the Effective Date of the Plan, Class 7 Allowed Interest holders are impaired and are deemed to have rejected the Plan.

.

## CONFIRMATION HEARING

The Bankruptcy Code requires that the Bankruptcy Court, after notice, hold a hearing to consider confirmation of the Plan. **The Confirmation Hearing is scheduled to commence on _____ at _____. in the United States Bankruptcy Court , One Bowling Greene New York, NY.** The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement made at the Confirmation Hearing.

The Bankruptcy Court has directed **that objections, if any, to confirmation of the Plan be filed and served on or before _____**. Objections must be served upon (i) Robinson Brog Leinwand Greene Genovese & Gluck P.C., 875 Third Avenue, New York, New York 10022, Attn.: A. Mitchell Greene, Esq., and (ii) United States Trustee, 33 Whitehall Street, 21st Floor, New York, New York 10004 and filed electronically in accordance with the Court's ECF procedures.

## REQUIREMENTS FOR CONFIRMATION

At the Confirmation Hearing, the Bankruptcy Court will determine whether the requirements of section 1129 of the Bankruptcy Code have been satisfied, in which event the Bankruptcy Court will enter an order confirming the Plan. These requirements include determinations by the Bankruptcy Court that: (i) the Plan has classified Claims and Interests in a permissible manner, (ii) the contents of the Plan comply with various technical requirements of the Bankruptcy Code, (iii) the Debtor has proposed the Plan in good faith, (iv) the Debtor has made disclosures concerning the Plan that are adequate and include information concerning all payments made or promised in connection with the Plan and the Case, (v) the Plan is in the "best interests" of all Creditors and Interest Holders, (vi) the Plan is feasible, and (vii) the Plan has been accepted by the requisite number and amount of Creditors or Interest Holders in each Class entitled to vote on the Plan, or that the Plan may be confirmed without such acceptances. The Debtor believes that all of these conditions have been or will be met prior to the Confirmation Hearing.

**Best Interest Test.**  The so-called "best interest" test requires that each impaired Creditor and impaired Interest Holder either (a) accepts the Plan or (b) receives or retains under the Plan property of a value, as of the Effective Date of the Plan, that is not less than the value such entity would receive or retain if the Debtor was to be liquidated under chapter 7 of the Bankruptcy Code.  No classes of claims are impaired pursuant to the Plan.  Allowed Interests are being extinguished.

To determine what the holders in each Class of Claims or Interest would receive if the Debtor was liquidated under chapter 7, the Bankruptcy Court must determine the dollar amount that would be generated from the liquidation of the Debtor's assets  in a chapter 7 liquidation case.  The amount that would be available for satisfaction of Allowed Claims against and Allowed Interests in the Debtor would consist of the proceeds resulting from the disposition of the Debtor's assets, augmented by the cash held by the Debtor at the commencement of the chapter 7 case.  Such amount would be reduced by the amount of any Claim or Claims secured by the Debtor's assets, the costs and expenses of the liquidation, and such additional Administrative Claims and Priority Claims that may result from the termination of the Debtor's business. Such value is then juxtaposed against the amount creditors are receiving under the Plan to determine if the value each impaired creditor is receiving is the same or more than such creditor would receive from a chapter 7 liquidation on the Confirmation Date.

The costs of liquidation under chapter 7 would become Administrative Claims with the highest priority against the proceeds of liquidation.  Such costs would include the fees payable to a chapter 7 trustee, as well as those which might be payable to attorneys, financial advisors, appraisers, accountants and other professionals that such trustee may engage to assist in the liquidation.  In addition, chapter 7 costs would include any liabilities incurred or assumed pursuant to the transactions necessary to effectuate the liquidation.   Moreover, claims entitled to administrative priority may arise by reason of any breach or rejection of any executory contracts entered into by the Debtor during the pendency of the Case in chapter 11.

After satisfying Administrative Claims arising in the course of the chapter 7 liquidation, the proceeds of the liquidation would then be payable to satisfy any unpaid expenses incurred during the time this Case was pending under chapter 11, including compensation for attorneys, financial advisors, appraisers, accountants and other professionals retained by the Debtor or any official committee appointed pursuant to section 1102 of the Bankruptcy Code.

After consideration of the effects that a chapter 7 liquidation would have on the proceeds available for distribution including (i) the increased costs and expenses of a chapter 7 liquidation arising from fees payable to the trustee in bankruptcy and professional advisors to such trustee, (ii) the erosion in value of the Debtor's assets in a chapter 7 case in the context of the expeditious liquidation required under chapter 7 and the "forced sale" atmosphere that would

prevail, (iii) the potential increases in Claims which would be satisfied on a priority basis or on a parity with the Claims of General Unsecured Creditors and (iv) the substantial amount of secured obligations in this case, the Debtor believes that in a chapter 7 liquidation there would be insufficient funds available to satisfy all of the administrative and secured debt on the Property and no funds available for distribution to unsecured creditors and interest holders.

**Liquidation Analysis.** The Debtor has concluded that the Plan provides to each Creditor and Interest Holder a recovery with a *present value* at least equal to the present value of the distribution that such person would receive if the Debtor was liquidated under chapter 7 of the Bankruptcy Code. The Plan reinstates the mortgages on the Property and provides for payment to holders of unsecured claims in full with interest. In a liquidation scenario, there would be insufficient funds to satisfy all of the administrative and secured obligations in full and holders of unsecured claims are unlikely to receive any distribution on account of their claims. Accordingly, the Debtor believes that the Plan provides Creditors with at least as much as they would be entitled to receive in a chapter 7 liquidation. A liquidation analysis is attached as Exhibit A.

**Feasibility.** For the Plan to be confirmed, it must be demonstrated that consummation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtor unless such liquidation is set forth in the Plan. This Plan calls for the liquidation of the Debtor through the sale of the Property. Thus, the Plan meets the feasibility requirements of the Bankruptcy Code.

**EFFECT OF CONFIRMATION**

**INJUNCTION**

**Except (i) as otherwise provided in the Plan, (ii) as otherwise provided under Final Order entered by the Bankruptcy Court or (iii) with respect to the Debtor's obligations under the Plan, the entry of the Confirmation Order shall forever stay, restrain and permanently enjoin with respect to any claim or interest held as of the Effective Date, (i) the commencement or continuation of any action, the employment of process, or any act to collect, enforce, attach, recover or offset from the property acquired by the Purchaser or from property of the Estate that has been, or is to be, distributed under the Plan, and (ii) the creation, perfection or enforcement of any lien or encumbrance against the property acquired by the Purchaser and any property of the Estate that has been, or is to be, distributed under the Plan.**

**Except as otherwise provided in the Confirmation Order, the entry of the Confirmation Order shall constitute an injunction against the commencement or continuation of any action, the employment of process, or any act, to collect, recover or offset, from the Debtor, from the property of the Estate or from the Purchaser, any claim, obligation or debt that was held by any person or entity as of the Effective Date except pursuant to the terms of the Plan.**

**Nothing in the Plan or the confirmation order shall effect a release of any claim by the United States Government or any of its agencies or any state and local authority whatsoever, including, without limitation, any claim arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against the Debtor, the Purchaser, or any of their respective members, shareholders, officers, directors, employees, attorneys, advisors, agents, representatives and assigns (the "Released Parties"), nor shall anything in the Plan enjoin the United States or any state or local authority from bringing any claim, suit, action or other proceedings against the Released Parties referred to herein for any liability whatever, including without limitation, any claim, suit or action arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state or local authority, nor shall anything in this Plan exculpate any party from any liability to the United States Government or any of its agencies or any state and local authority whatsoever, including liabilities arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against the Released Parties referred to herein.**

**Pursuant to Bankruptcy Code Section 1141(d)(3), the Debtor is not receiving a discharge.**

LIMITATION OF LIABILITY

Section 1125(e) of the Bankruptcy Code, commonly referred to as the "safe harbor," protects persons acting in good faith, from civil claims arising in connection with solicitations of acceptances of plans of reorganization or participating in the offer, issuance, sale or purchase of a security under the Plan. Pursuant to section 1125(e), as set forth in Article 9 of the Plan, neither the Debtor, the Purchaser, nor any of their respective officers, directors, members, general partner, managers or employees (acting in such capacity), nor any professional person employed by any of them shall have or incur any liability to any entity for any action taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, Confirmation or consummation of the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into, or any other action taken or omitted to be taken in connection with the Case or the Plan except for (i) willful misconduct and gross negligence and (ii) liability of any released person for any debt owed to the United States Government, any state, city or municipality arising under (a) the Internal Revenue Code or any state, city or municipal tax code, (b) the environmental laws of the United States or any state, city or municipality or (c) any criminal laws of the United States, any state, city or municipality. From and after the Effective Date, a copy of the Confirmation Order and the Plan shall constitute, and may be submitted as, a complete defense to any claim or liability released pursuant to Article 9 of the Plan.

In accordance with section 524(e) of the Bankruptcy Code, the limitation on liability set forth above is not intended to, and the Debtor does not believe that the language has, any impact on any guaranty of any obligations made by a third party to any of the Debtor's creditors.

ALTERNATIVES TO THE PLAN

If the Plan is not confirmed by the Bankruptcy Court the alternatives may include (a) liquidation of the Debtor under chapter 7 of the Bankruptcy Code or (b) the promulgation and confirmation of an alternative plan of reorganization.

The Debtor believes that the Plan provides a recovery to all Creditors and Interest Holders equal to or greater than would be obtainable in chapter 7 liquidation. See Liquidation Analysis, Exhibit "A".

If the Plan is not confirmed, the Debtor could attempt to formulate a different plan of reorganization.  Such a plan might involve both a reorganization and continuation of the Debtor's business or an orderly liquidation of its assets.  The Debtor believes that the Plan enables Creditors and Interest Holders to realize the most value under the circumstances at the present time.  The Debtor reserves its right to file any amended plan and/or disclosure statement.

### CERTAIN FEDERAL INCOME TAX CONSEQUENCES

The following summary of certain U.S. Federal income tax consequences is for informational purposes only and is not a substitute for careful tax planning and advice based upon the particular circumstances pertaining to each holder of an Allowed Claim. Each holder of an Allowed Claim is urged to consult his own tax advisors. This summary does not cover all potential U.S. federal income tax consequences that could possible arise under the Plan and does not address the Plan's U.S. federal income tax consequences for any holder of an Allowed Claim that is a partnership (or other pass-through entity) or otherwise subject to special tax rules.

The Debtor has not researched the tax consequences of the Plan to holders of Claims and Interests.  The Debtor has not requested any ruling from the Internal Revenue Service or any other taxing authority with respect to such matters.  Therefore the nor will the Debtor, with respect to the federal income tax consequences of the Plan, obtain any opinion of counsel. Consequently, there can be no assurance that the treatment set forth in the following discussion will be accepted by the IRS.  The Debtor offers no statements or opinions that are to be relied upon by the creditors as to the treatment of creditors' claims under the Plan.  Matters not discussed in this Disclosure Statement may affect the tax consequences of the Plan on any particular holder of a Claim or Equity Interest. Holders of equity interests that choose not to participate in the Plan may have adverse tax consequences resulting from such decision.  EACH HOLDER OF A CLAIM OR INTEREST IS URGED TO CONSULT ITS OWN TAX ADVISOR AS TO THE CONSEQUENCES OF THE PLAN UNDER FEDERAL AND APPLICABLE STATE, LOCAL AND FOREIGN TAX LAWS.

This summary is based upon the laws in effect on the date of this Disclosure Statement and existing judicial and administrative interpretations thereof, all of which are subject to change, possibly with retroactive effect. Holders of Allowed Claims should consult their own tax advisors as to the Plan's specific federal, state, local and foreign income and other tax consequences.

The tax consequences to Holders will differ and will depend on factors specific to each Holder, including but not limited to: (i) whether the Holder's Claim (or portion thereof) constitutes a claim for principal or interest; (ii) the origin of the Holder's Claim; (iii) the type of consideration received by the Holder in exchange for the Claim; (iv) whether the Holder is a United States person or foreign person for tax purposes; (v) whether the Holder reports income on the

accrual or cash basis method; (vi) whether the Holder has taken a bad debt deduction or otherwise recognized loss with respect to a Claim.

**THERE ARE MANY FACTORS WHICH WILL DETERMINE THE TAX CONSEQUENCES TO EACH HOLDER. FURTHERMORE, THE TAX CONSEQUENCES OF THE PLAN ARE COMPLEX, AND IN SOME CASES, UNCERTAIN. THEREFORE IT IS IMPORTANT THAT EACH HOLDER OBTAIN HIS, HER OR ITS OWN TAX ADVICE REGARDING THE TAX CONSEQUENCES TO SUCH HOLDER AS A RESULT OF THE PLAN.**

**THE DISCUSSION HEREIN IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, BY ANY HOLDER FOR THE PURPOSE OF AVOIDING TAX PENALTIES THAT MAY BE IMPOSED ON A TAX PAYER. THE DIUSSION HEREIN WAS WRITTEN TO SUPPORT THE TRANSACTIONS DESCRIBED IN THIS DISCLOSURE STATEMENT. EACH HOLDER SHOULD SEEK ADVICE BASED UPON THE HOLDER'S PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.**

## ADDITIONAL INFORMATION

Requests for information and additional copies of this Disclosure Statement and the other materials delivered together herewith and all deliveries, correspondence and questions, as the case may be, relating to the Plan should be directed to (i) the Debtor's counsel, Robinson Brog Leinwand Greene Genovese & Gluck P.C., 875 Third Avenue, New York, New York 10022-0143, Attn.: A. Mitchell Greene, Esq., (212) 603-6300 or (ii) may be retrieved from the Court's web site at https://ecf.nysb.uscourts.gov/cgi-bin/login.pl (provided such party has PACER access) by searching case no 11-11272.

Copies of all pleadings, orders, lists, schedules, proofs of claims or other documents submitted in these cases are on file in the Office of the Clerk of the United States Bankruptcy Court, Alexander Hamilton Custom House, One Bowling Green, New York, New York 10004, and are available for public inspection Monday through Friday, between the hours of 9:00 a.m. and 5:00 p.m.

## CONCLUSION

The Debtor believes that confirmation of the Plan is in the best interests of all Creditors and Interest Holders.

**Dated:** New York, New York
~~May 5,~~ June ___, 2011

**EAST 167th STREET REALTY CORP.**

By: _____
 **Richard Anzarouth, Vice President**

**ROBINSON BROG LEINWAND GREENE GENOVESE & GLUCK P.C.**
**Attorneys for Debtor**
875 Third Avenue
New York, New York 10022
(212) 603-6300

By:_____
 **A. Mitchell Greene**

**Exhibit A: Liquidation Analysis**

**Exhibit B: Contract of Sale**

Document comparison by Workshare Professional on Thursday, June 02, 2011 12:05:36 PM

| Input: | |
|---|---|
| Document 1 ID | file://X:\CLIDOCS\019225\0000\~VER\1\00529821.DOC |
| Description | 00529821 |
| Document 2 ID | file://X:\CLIDOCS\019225\0000\00529821.DOC |
| Description | 00529821 |
| Rendering set | standard |

| Legend: | |
|---|---|
| Insertion | |
| ~~Deletion~~ | |
| ~~Moved from~~ | |
| Moved to | |
| Style change | |
| Format change | |
| ~~Moved deletion~~ | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 18 |
| Deletions | 10 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 28 |